# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

ANTONY SEGUNDO LARRAZABAL-GONZALEZ,

                    Petitioner,

v.                                    CIVIL ACTION NO.   2:26-cv-00049

CHRISTOPHER MASON, et al.,

                    Respondents.

## MEMORANDUM OPINION AND ORDER

This case does not arise in isolation.

The court is aware that similar seizures and detentions are occurring increasingly across the country.[1] Individuals are stopped during ordinary civilian activity, taken into custody for civil immigration purposes, and confined in local jails without prompt hearings, without individualized findings, and often far from counsel, family, or community. That broader context matters, especially when assessing constitutional risk.

---

[1] *See e.g., L.R. v. Noem*, No. 2:25-CV-02019-RFB-BNW, 2026 WL 161605, at *11 (D. Nev. Jan. 21, 2026) ("This Court has received an influx of similar [immigration habeas] cases over the last few months . . . ."); *Garcia v. London*, No. 8:25CV624, 2025 WL 3268705, at *2 (D. Neb. Nov. 24, 2025) (Petitioner filed a habeas petition "based on her assertion that she was entitled to but has not been provided with a bond hearing, making her continued detention unlawful."); *Cordoba v. Knight*, No. 1:25-CV-00605-BLW, 2025 WL 3228945, at *9 (D. Idaho Nov. 19, 2025) (Noting that "courts across the country have ordered the immediate release of detainees in similar situations" and then ordering release of a petitioner who challenged his detention without a bond hearing) (collecting cases); *Lopez v. Olson*, No. 3:25-CV-654-DJH, 2025 WL 3217036, at *4 (W.D. Ky. Nov. 18, 2025) ("Therefore, the Court concludes that detaining [petitioner] without giving her a bond hearing violates due process."); *Rashid v. Trump*, No. 2:25-CV-732, 2025 WL 3210955, at *9 (D. Vt. Oct. 27, 2025) (rejecting the idea that only detention that is "indefinite" or "potentially permanent" violates due process); *Escobar v. Perry*, No. 3:25CV758, 2025 WL 3006742, at *13 (E.D. Va. Oct. 27, 2025) ("Petitioner is subject to the due process protections of the Fifth Amendment, and his detention without a bond hearing violates those protections."); *Garcia v. Raybon*, No. 2:25-cv-13086, 2025 WL 2976950, at *4 (E.D. Mich. Oct. 21, 2025) ("And because [petitioner] has been detained without having received such a bond determination hearing, he is in federal custody in violation of federal law.").

Of course, this court does not supervise immigration enforcement. It does not adjudicate removability. It does not weigh policy choices committed to the political branches. This court does, however, maintain a narrow, unavoidable duty to ensure that custody itself is lawful.

It is not the vigilance of detainees or the speed of their lawyers that determines what is and what is not constitutional. Nor does the United States Constitution require habeas petitions to activate its protections. Liberty is not a prize for procedural persistence. It is the baseline.

That is why the court's duty to scrutinize custody is more acute than ever, as liberty is *administratively* restrained. Every day it happens—outside the criminal process, in facilities designed for punishment, and lacking the ordinary safeguards that must accompany arrest and prosecution.

And while judicial restraint is often the right answer in a system of checks and balances, it does not mean that courts should subscribe to judicial passivity. Instead, courts must draw and hold clear lines in every case. Here that line is a simple proposition: the government may not confine a person in a jail without promptly justifying that confinement before a neutral decisionmaker in a manner the person can meaningfully access.

I.  **BACKGROUND**

On January 13, 2026, Petitioner Antony Segundo Larrazabal-Gonzalez was arrested and detained by Immigration Customs and Enforcement ("ICE") officers while travelling on Interstate 77.[2] [ECF No. 1, ¶ 8]. On January 22, 2026, Petitioner filed his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. *Id.* ¶ 1. Since his arrest, Petitioner has been held at South Central Regional Jail in Charleston, WV. *Id.* ¶¶ 1, 8. Petitioner seeks "immediate release from immigration

---

[2] As alleged in the Petition, Petitioner was travelling with two other persons who were also stopped, arrested, and detained by ICE officers. One of those detainees is Ms. Damary Alejandra Rodriguez Flores, and she has a petition pending before this court in civil action 2:26-cv-00044.

detention, or in the alternative, an order directing Respondents to provide him with a constitutionally adequate custody hearing before a neutral decisionmaker with authority to assess the necessity of detention and to order release on appropriate conditions." *Id.* ¶ 2.

According to the Petition, Petitioner is a citizen and national of Venezuela and a noncitizen resident of the United States. *Id.* ¶¶ 1, 14, 15. He entered the United States in 2023, and lives in Atlanta, Georgia. *Id.* ¶ 15. Petitioner has already been in immigration proceedings, attending multiple Executive Office of Immigration Review ("EOIR") court dates, and he is scheduled to appear in Atlanta on October 19, 2026. *Id.*

Petitioner asserts that his confinement is "civil and administrative in nature" and that it is not based on any criminal conviction or charge. *Id.* ¶ 17. As of now, Petitioner asserts that no administrative judge or neutral decisionmaker has determined that his confinement is justified based on an individualized assessment.[3] *Id.* ¶ 19–20. This confinement, Petitioner alleges, violates his Fifth Amendment Due Process Rights, the Immigration and Nationality Act, the Administrative Procedures Act, the Equal Protection Clause of the Fifth Amendment, and the Suspension Clause. *Id.* ¶¶ 36–67.

Petitioner also filed an Expedited Motion to Set a Show Cause Hearing, [ECF No. 5]. On January 22, 2026, the court granted the motion, [ECF No. 6]. The court stayed any removal proceeding that would take Petitioner out of the district, and the court set a briefing schedule and a hearing for January 27, 2026. On January 24, 2026, Respondents timely responded to the Petition and moved for dismissal based on several legal theories.

---

[3] In its brief, the Government asserts that "DHS noticed hearing" for the Petitioner on "January 29, 2026, only six days from" the filing of the response. [ECF No. 15-1, at 25]. It is not clear when that hearing was noticed or where that hearing is. At the January 27, 2026 hearing the Government appeared to confirm that the only immigration hearing the Petitioner had notice of was the October 2026 hearing in Atlanta.

3

Primarily, the federal Respondents[4] ("the Government") argue that the Petition should be dismissed because 8 U.S.C. §§ 1252(e)(3), 1252(g), and 1252(b)(9) bar this court from exercising jurisdiction. [ECF No. 15-1, at 9]. The Government also argues that the Petitioner has failed to exhaust his administrative remedies, that the Petitioner lacks standing to bring his Administrative Procedures Act claim, that the Petitioner's detention is mandatory, and that the Petitioner has received sufficient due process under the INA.[5]

## II. LEGAL STANDARD

"A federal court may grant habeas relief 'only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States.'" *Weeks v. Angelone*, 176 F.3d 249, 262 (4th Cir. 1999) (quoting 28 U.S.C. § 2254(a)); *see also Torrence v. Lewis*, 60 F.4th 209, 213–14 (4th Cir. 2023). The "heart of habeas corpus" is the challenge to a petitioner's confinement (or the duration of his confinement), where he seeks "immediate release or a speedier release from that confinement." *Preiser v. Rodriguez*, 411 U.S. 475, 498 (1973). After considering the Respondent's arguments, "[t]he court shall summarily hear and determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

## III. DISCUSSION

On January 27, 2026, the court held a show cause hearing on the Petition for Writ of Habeas Corpus. [ECF No. 21]; *see also* 28 U.S.C. § 2243 (A "judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted."). Counsel for the state Respondent, counsel for the

---

[4] The state Respondent, Superintendent of South Central Regional Jail Christopher Mason, makes no argument other than he is a "nominal" Respondent in this matter. [ECF No. 14].
[5] The Government alternatively argues that if the court grants the petition, the "only relief" the court should order is a bond hearing. [ECF No. 15-1, at 25–26].

federal Respondents, and counsel for the petitioner were present. For the following reasons, the Petition is **GRANTED**.[6]

### A. The Burden of Justifying Custody

The court began the January 27, 2026 hearing by informing the parties of the hearing's sole purpose: to determine whether Petitioner's arrest and continued detention complied with the Constitution of the United States. That, the court said, was the singular inquiry when a petition for writ of habeas corpus challenges an unlawful detention. The court further stated—without objection—that the burden of proof rested on the Government to justify custody. Because the Government is the custodian and controls the relevant information, it bears the burden to produce evidence and articulate lawful authority justifying continued detention once a credible due process challenge is raised.

The Government, however, did not meet that burden.

### B. The Government's Failure to Present Evidence

The Government presented no witnesses. It offered no affidavits. It introduced no testimony. The Government put no one on the stand: not an arresting officer or an immigration officer or a custodian or a decisionmaker. It offered no warrant, of any kind, nor did it offer evidence that any warrant was sought or obtained. And despite the court's inquiry, the Government could produce no evidence that the Petitioner presented circumstances of exigency, flight, or

---

[6] This court has jurisdiction. First, Petitioner petition may appropriately be heard in a district court outside of the D.C. district court because his claim is specific and tailored to his own detention. Therefore, 8 U.S.C. § 1252(e)(3) does not preclude this court's jurisdiction. Second, 8 U.S.C. § 1252(g) only governs three discrete actions taken by the Attorney General, none of which apply here. Nor is the statute so broad as to strip courts of jurisdiction for every action that relates to or "arises from" an immigration detention. *Jennings v. Rodriguez,* 583 U.S. 281, 294 (2018). Lastly, the Fourth Circuit has already addressed the applicability of 8 U.S.C. § 1252(b)(9). That provision only applies to the "review of an order of removal under" 8 U.S.C. § 1252(a)(1). *Casa De Maryland v. U.S. Dept of Homeland Security*, 924 F.3d 684, 697 (4th Cr. 2019) (citing *INS v. St. Cyr*, 533 U.S. 289, 313 (2001)). Petitioner does not ask the court to review a removal order; therefore, section 1251(a)(1) does not bar jurisdiction.

necessity. In fact, the Government could not show that the Petitioner had even been evaluated under that criteria or any other criteria.

Basic questions about Petitioner's detention were also left unanswered. When asked who ordered the stop, why the vehicle was stopped, what legal authority was invoked, what facts were known at the time, what statements were made, what notice was given, what process was available, and when any hearing would occur; the Government repeatedly answered: "I don't know."

Instead, the Government relied on documents attached to its brief, including two forms from events that took place in 2023. But when asked if the Government would offer those documents as evidence, the Government declined to do so. The court ruled that the attachments to the briefs were not evidence.

Even considering the most favorable view of the Government's position, the record shows only that at some time, for some reason, an immigration officer checked boxes on a form indicting unlawful presence. That form does not document any statement by the Petitioner, does not identify the relevant officers who obtained any information, does not describe the circumstances of the stop, and does not establish that any neutral decisionmaker reviewed or approved detention. Without more, the Government falls far short of proving its justification for detaining Petitioner, nor can the Government overcome Petitioner's habeas challenge of an unlawful detention.

Habeas corpus is not an abstract inquiry into statutory authority, as the Government appeared to argue at the hearing. Rather, habeas corpus is a concrete demand that the jailer explain the jail. When the Government confines a person, it must be prepared—when called upon—to show who seized him, why, how, and under what authority. A statute does not execute itself. Detention is not self-justifying. Courts do not infer constitutionality from silence. Courts do not presume lawfulness when no evidence is offered to support it.

Here, the Government presented no evidence. This was not a technical failure. It was a complete one.

### C. Due Process

At the hearing, the Government conceded that any person within the boundaries of the United States is entitled to due process under the Constitution. That concession is correct.

The Fifth Amendment of the Constitution promises freedom and protection to all persons. "No person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. This core principle of procedural due process is that detention triggers the right to a prompt hearing to test its legality. In short, it is unconstitutional for the Government to detain a person without explanation, without a hearing, without notice, or without any means of challenging that detention.

Here, that is exactly what the Government did. After federal officers arrested the Petitioner, he was held in a state jail. Nine days passed before Petitioner could obtain counsel and counsel could file his habeas petition.[7] At the time of the Petition's filing, federal authorities had not scheduled a hearing for the Petitioner, nor had the Petitioner received notice of a hearing to determine whether removal proceedings would begin.

This sequence is indistinguishable in principle from holding a citizen on a criminal charge without arraignment or bail hearing. The Constitution does not tolerate such delay simply because

---

[7] Of course, the Petitioner does not have constitutional protections *only* when he files a habeas petition. That distinction—that constitutional rights do not only protect persons when a lawsuit has been filed—is an important one. It is because of the many lawsuits surrounding ICE actions (including arrest, detention, and other enforcement actions) that I cannot view this case outside of the national, political, and legal context. Across the country, federal immigration enforcement operations have sparked controversy and concerns about constitutional overreach. In Minneapolis, federal immigration and border agents have been involved in multiple fatal shootings of U.S. citizens. Those events have prompted widespread protest and calls for accountability.

the detained person is subject to immigration law. In fact, the Petitioner's immigration status does not burden the relevant constitutional protections.

Despite what some may have been led to believe, immigrants illegally in this country enjoy protections guaranteed by the Fifth Amendment. "[O]nce an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). *See also Pyler v. Doe*, 457 U.S. 202, 210 (1982) ("Indeed, we have clearly held that the Fifth Amendment protects aliens whose presence in this country is unlawful from invidious discrimination by the Federal Government."); *Reno v. Flores*, 507 U.S. 292, 307 ("It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings.").

Here, Petitioner is a citizen and national of Venezuela. Still, he is guaranteed protections under the U.S. Constitution. Petitioner has lived in the United States since 2023, and the Government presented no evidence that he has a criminal record, nor did the Government present evidence that he is a danger to the community or a flight risk. In fact, Petitioner has regularly attended immigration hearings since 2023, and his next hearing is scheduled for October 19, 2026. [ECF No. 1, at 4].

But at the January 27, 2026 hearing, the Government could only surmise that the October hearing would be expedited if Petitioner remained detained. This detention-first and hearing-sometime-later practice finds no support in the Constitution. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process Clause] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

The Constitution does not tolerate what would be plainly unlawful in the criminal context simply because the detention is labeled civil. Nor does the Constitution withhold its protections when a person is an immigrant.

### D. Remedy

After the hearing concluded, the Government requested additional time to present evidence or affidavits. The court denied that request. Habeas corpus does not permit detention to continue while the Government justifies its actions after the fact.

Because the Government failed to meet its burden to justify custody, continued detention cannot stand. There is no factual record to remand. There is no process to await. The Constitution requires release.

Therefore, I **FIND** that Petitioner's detention is unlawful.[8] Because the Constitution demands due process, the Petitioner must be released.

### IV. CONCLUSION

In our society, freedom is the constitutional default.[9]

When the Government confines a person in a jail and, when called upon, cannot articulate the facts or authority justifying that confinement, the detention violates the Fifth Amendment. Habeas corpus exists precisely for this moment.

Therefore, the Petition for Writ of Habeas Corpus, **[ECF No. 1],** is **GRANTED**. Petitioner is **ORDERED** released immediately from civil immigration custody. Respondents are

---

[8] For the reasons already stated, Petitioner's civil detention violates due process and also satisfies the factor test of *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Here, Petitioner has a significant private interest in not being detained, and his continued detention further increases his risk of continuously and erroneously depriving him of freedom, especially as he has been afforded no opportunity to be heard by an immigration decisionmaker. Lastly, while the Government has an interest in immigration, its burden in detaining immigrants with no further process is high.

[9] *United States v. Salerno*, 481 U.S. 739, 755 (1987).

**PROHIBITED** from re-arresting and detaining Petitioner absent significant change in circumstances to justify detention or subject to the determination of an Immigration Judge.

The court has additionally considered whether to grant a certificate of appealability. *See* 28 U.S.C. § 2253(c). A certificate will not be granted unless there is "a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). The standard is satisfied only upon a showing that reasonable jurists would find that any assessment of the constitutional claims by this court is debatable or wrong and that any dispositive procedural ruling is likewise debatable. *Miller–El v. Cockrell,* 537 U.S. 322, 336–38 (2003); *Slack v. McDaniel,* 529 U.S. 473, 484 (2000); *Rose v. Lee,* 252 F.3d 676, 683–84 (4th Cir.2001). The court concludes that the governing standard is not satisfied in this instance. Accordingly, the court **DENIES** a certificate of appealability.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel, any unrepresented party, and the United States Attorney's Office for the Southern District of West Virginia.

The court further **DIRECTS** the Clerk to post a copy of this published opinion on the court's website, www.wvsd.uscourts.gov.

ENTER: January 28, 2026

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE